IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GUY M. DOMAI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>FNU LEMMON,<br><br>　　　　　Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:17-cv-869-TS-BCW<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Brooke C. Wells |

District Judge Ted Stewart referred this case to Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B).[1] On August 9, 2017, the Court granted Guy M. Domai's ("Plaintiff") application for leave to proceed *in forma pauperis* and waived the prepayment of filing fees pursuant to 28 U.S.C. § 1915 ("IFP Statute").[2] Accordingly, the Court will screen Plaintiff's Complaint as required under the IFP Statute.[3] In addition, because Plaintiff is proceeding pro se in this case, the Court will construe his pleadings liberally.[4]

## BACKGROUND

The facts are taken from Plaintiff's Complaint. Plaintiff asserts that he has been repeatedly harassed by students at Brigham Young University ("BYU"), as well as by several

---

[1] Docket no. 7.

[2] Docket no. 2.

[3] *See, e.g.*, *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005).

[4] *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

BYU police officers.  Specifically, Plaintiff contends that on July 31, 2016, he was "working on his cases" at the Wilkinson Student Center on the BYU campus when he was approached by two BYU campus police officers.[5]  The officers explained that they had received a call informing them that Plaintiff was taking pictures of people in the cafeteria.  The officers requested that Plaintiff provide his phone or he would "be taken away."[6]  Plaintiff informed them that the report they received was false and that they had no basis to look through his phone or to remove him from campus.  Plaintiff alleges that the officers became verbally aggressive with him and insisted that he provide identification.  He refused and informed the officers that he intended to file a complaint against them.  Plaintiff immediately went to the BYU police station to file a written complaint against the two officers and a request for an investigation into the identity of the caller who reported him to police.

Several weeks before the July 31 incident, Plaintiff asserts that he had a conversation with Officer Christiansen of the BYU Police Department, who had been called to the cafeteria by an anonymous source.  The caller reported that Plaintiff was sitting in one of the corners of the cafeteria and that "he was suspicious."[7]  Plaintiff states that he informed Officer Christiansen of previous harassment by students.  Plaintiff contends that when Officer Christiansen instructed him to simply call campus police next time he is harassed, Plaintiff expressed his reluctance to do so because the campus officers have previously accused *him* of harassing students.

---

[5] Docket no. 3 at 10.

[6] *Id.*

[7] *Id.* at 11.

Plaintiff alleges that a mere two weeks after that encounter with Officer Christiansen, Plaintiff was "kicked out" of the Wilkinson Student Center.[8] Plaintiff states that he was able to work without interruption for five hours until a group of students arrived who appeared to be doing "some sort of martial arts exercises" on the first floor of the building.[9] He alleges that the students began speaking loudly to Plaintiff from downstairs, telling him he will never have the chance to finish his cases because "they will do everything to stop him."[10] He further alleges that "Federal Justice Furse . . . was named and a comment was associated to her saying that [s]he will never hear [his] cases."[11] Plaintiff also states that he "calmly" told them to stop but they failed to do so.[12] Plaintiff contends that the students began making comments about his cases and his personal projects; and, during this taunting, the students even named his ex-girlfriend.

Plaintiff states that he then spoke with the "leader" of the "Jui Jitsu group" and requested that she and her group stop harassing him but she denied any wrongdoing.[13] Plaintiff alleges that one of the male students became verbally aggressive toward Plaintiff. Plaintiff asserts that he went back upstairs to work on his cases and to prepare a written complaint about the harassment.

Plaintiff contends that thirty minutes later, three campus police officers arrived. One of the officers, Officer Lenny, advised Plaintiff that he and the other two officers were responding

---

[8] *Id.*

[9] *Id.* at 12.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

to a call made from a student inside the building who complained that Plaintiff was harassing them. Plaintiff explained to the officers that he had not been harassing anyone but rather he was the victim of harassment. After speaking with the students, Officer Lenny ordered Plaintiff to leave the premises because the students stated that Plaintiff was harassing them. Plaintiff told Officer Lenny that he did not have the authority to remove Plaintiff from campus, especially when Plaintiff was the victim. Officer Lenny allegedly informed Plaintiff that because BYU is private property and Plaintiff is not a student or staff member, he could require Plaintiff to leave campus. Plaintiff then told Officer Lenny that he was "out of his mind," "crazy," and "full of it to try to impose their legendary trespass ban" on Plaintiff.[14] Plaintiff states that Officer Lenny became more aggressive and ultimately placed Plaintiff on a 24-hour trespassing ban. Plaintiff left campus with the three officers following closely.

While the timeframe is not clear from Plaintiff's Complaint, Plaintiff went to the police station to fill out a form seeking an investigation into the allegedly false reports about him, and while he was there, he asked to speak with another officer to file a "verbal complaint" about the three officers.[15] He was referred to the officers' supervisor, Lieutenant Lemmon. Plaintiff states that he informed Lieutenant Lemmon that he was on campus to work on his cases and that students regularly make false accusations against him in an attempt to have him removed from campus. Plaintiff explained to Lieutenant Lemmon that Officer Christiansen's advice to call campus police whenever students were harassing him had backfired. Plaintiff cautioned

---

[14] *Id.* at 13.

[15] *Id.* at 14.

Lieutenant Lemmon that if the students and police officers continue to plot against him, he would be forced to file a lawsuit against BYU.

Plaintiff asserts that Lieutenant Lemmon advised Plaintiff that because he had "become a nuisance on . . . campus causing trouble everywhere he went," BYU was permanently banning Plaintiff from campus.[16] Lieutenant Lemmon also notified Plaintiff that he would be "incarcerated if he comes back on campus."[17] Plaintiff told Lieutenant Lemmon he was being banned from campus for racist reasons (because Plaintiff is presumably African-American).[18] Lieutenant Lemmon advised Plaintiff that he was not being banned based on his race, rather because BYU is a private university, it can remove people from campus for any reason.

## **LEGAL STANDARDS**

Whenever the Court authorizes a party to proceed without payment of fees under the IFP statute, it is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."[19] In determining whether a complaint fails to state a claim for relief under the IFP statute, the Court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure.[20] Under that standard, the Court "look[s] for plausibility in th[e]

---

[16] *Id.* at 15.

[17] *Id.*

[18] *Id.* at 15 (Plaintiff told Lieutenant Lemmon he "should also be ashamed to pure his racist practices").

[19] 28 U.S.C. § 1915(e)(2)(B)(ii).

[20] *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

complaint."[21]  More specifically, the Court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[22]

In undertaking that analysis, the Court is mindful that Plaintiff is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[23]  At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[24] and it "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[25]  Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.  Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the

---

[21] *Id*. at 1218 (quotations and citations omitted) (second alteration in original).

[22] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

[23] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187.

[24] *Bellmon*, 935 F.2d at 1110.

[25] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

plaintiff's well-pleaded factual contentions, not his conclusory allegations.[26]

With these standards in mind, the Court will now review the sufficiency of Plaintiff's Complaint under the IFP Statute.

## ANALYSIS

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that Lieutenant Lemmon permanently and unilaterally banned him from campus without probable cause or due process of law. Section 1983 does not create specific rights; rather, it "provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured by the Constitution and laws of the United States."[27] Thus, to assert a cause of action under section 1983, Plaintiff's Complaint must set forth both of the following elements: (1) "the existence of a federally-protected right" and (2) "the deprivation of that right by a person acting under color of state law."[28] Plaintiff's first cause of action[29] alleges that Lieutenant Lemmon deprived him of due process under the First Amendment and/or Title II of the Civil Rights Act of 1964.[30] Plaintiff's second cause of action alleges a claim against Lieutenant Lemmon for "abuse of process."[31]

This Court concludes that Plaintiff's Complaint fails to establish either element of a § 1983 claim. First, Plaintiff has not demonstrated that he has a constitutional right of access to

---

[26] *Bellmon*, 935 F.2d at 1110 (citations omitted).

[27] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

[28] *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013).

[29] Docket no. 3 at 19.

[30] 42 U.S.C § 2000a (prohibiting discrimination in public accommodations).

[31] Docket no. 3 at 22.

7

BYU's campus, including the Wilkinson Student Center. Plaintiff has not asserted that he is a student or staff member of BYU, nor does Plaintiff otherwise identify the source of his purported entitlement to BYU's grounds or facilities. Plaintiff has not alleged that he was searched or arrested; as even he explains it, Lieutenant Lemmon merely banned him from BYU, a private university. Moreover, BYU is not a place of public accommodation as Plaintiff alleges. While 42 U.S.C. § 2000a protects an individual's "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin," BYU, as a private university, does not meet the statutory definition of a "place of public accommodation."[32] Thus, Plaintiff has failed to allege any facts demonstrating that Lieutenant Lemmon violated any right "secured by the Constitution and laws" of the United States.[33]

Nor has Plaintiff alleged that Lieutenant Lemmon is a state actor for purposes of § 1983. "In order to allege that private conduct is 'fairly attributable to the state,' the complaint must show that the private party is 'a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"[34] However,

---

[32] 42 U.S.C. § 2000a(b) (listing places of public accommodation, such as hotels, restaurants, and places of entertainment).

[33] 42 U.S.C. § 1983.

[34] *Walton v. U.S. Bank*, No. 2:09-cv-931, 2010 WL 3928507, at *2 (D. Utah Oct. 4, 2010) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

"[t]he Supreme Court has left open the circumstances under which private security officers may be deemed to perform public functions for purposes of § 1983 suits."[35]

In addition, Plaintiff's claims against Lieutenant Lemmon for abuse of process also fail as a matter of law. "Abuse of process applies to one who uses a legal process against another primarily to accomplish a purpose for which it is not designed."[36] "To establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings."[37] "To satisfy the 'wilful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[38] Plaintiff has not demonstrated that Lieutenant Lemmon has utilized *any* legal process against Plaintiff and/or did so with an improper purpose or ulterior motive. In fact, he has not identified any lawsuit or proceeding that was brought against him by Lieutenant Lemmon or BYU. Because "the initiation or continuation of 'civil proceedings' is required as an element of this cause of action,"[39] this claim fails as well.

---

[35] *Fleck v. Trustees of Univ. of Pennsylvania*, 995 F. Supp. 2d 390, 401 (E.D. Pa. 2014).

[36] *Garth O. Green Enterprises, Inc. v. Harward*, No. 2:15-CV-00556-DN-EJF, 2017 WL 1184024, at *11 (D. Utah Mar. 29, 2017) (quoting *Hatch v. Davis*, 102 P.3d 774, 782 (Utah Ct. App. 2004) (hereinafter, "*Hatch I*")).

[37] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (citing *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006) (hereinafter, "*Hatch II*")).

[38] *Hatch II*, 147 P.3d at 390 (quoting *Hatch I*, 102 P.3d at 782).

[39] *Foster v. Saunders*, No. 20040527-CA, 2005 WL 1346799, *1 (Utah Ct. App. June 9, 2005) (quoting Restatement (Second) of Torts § 674).

The Court has liberally construed Plaintiff's Complaint and concludes that Plaintiff has failed to provide enough well-pleaded factual allegations to support his alleged claims for relief. Thus, Plaintiff's current Complaint fails to state claims upon which relief can be granted. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[40] Here, even under a broad reading of Plaintiff's Complaint, the undersigned finds it is obvious that Plaintiff cannot prevail on the alleged facts. Thus allowing an opportunity to amend would be futile and a waste of judicial resources.[41]

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint be dismissed for failure to "state a claim on which relief may be granted."[42]

## NOTICE

Copies of this Report and Recommendation are being sent to Plaintiff who is hereby notified of his right to object.[43] Within fourteen (14) days after being served with a copy,

---

[40] *Kay*, 500 F.3d at 1217 (quotations and citations omitted).

[41] *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989) (noting the function of § 1915(d) that provides "authority to dismiss a claim based on an indisputably meritless legal theory, [and] the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("a court may dismiss sua sponte 'when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'") (quoting *McKinney v. State of Okl., Dept. of Human Services, Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991)).

[42] 28 U.S.C. § 1915(e)(2)(B)(ii).

[43] *See* 28 U.S.C. § 636(b)(1).

Plaintiff may serve and file written objections to such proposed findings and recommendations as provided by rules of Court. Any objection must be filed within this deadline. Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 17th day of April, 2018.

BY THE COURT:

Brooke C. Wells
United States Magistrate Judge